**MILDENBERG LAW FIRM**
Brian R. Mildenberg, Esq.
Attorney ID No. 84861
1735 Market St., Suite 3750
Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
*Attorney for Plaintiffs*

**SCHAFKOPF LAW, LLC**
Gary Schafkopf, Esq.
Attorney ID No. 83362
11 Bala Ave.
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334
*Attorney for Plaintiffs*

**WEISBERG LAW**
Matthew B. Weisberg, Esq.
Attorney ID No. 85570
L. Anthony DiJiacomo, III, Esq.
Attorney ID No. 321356
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
*Attorneys for Plaintiffs*

FILED
MAY 10 2018
KATE BARKMAN, Clerk
By____ Dep. Clerk

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STAFF INSPECTOR DEBRA FRAZIER** : | |
| : | |
| And : | No.: 2:17-cv-05421-WB |
| : | |
| **CAPTAIN LAVERNE VANN** : | **JURY TRIAL OF TWELVE (12)** |
| : | **DEMANDED** |
| And : | |
| : | |
| **LIEUTENANT ANTHONY BURTON** : | |
| : | |
| And : | |
| : | |
| **POLICE OFFICER SHAMAL BRYANT** : | |
| : | |
| Plaintiffs, : | |
| v. : | |
| : | |
| **CITY OF PHILADELPHIA** : | |
| **d/b/a PHILADELPHIA POLICE** : | |
| **DEPARTMENT** : | |
| 1515 Arch St, 16th FL : | |
| Philadelphia, PA 19102 : | |
| : | |
| And : | |

| | |
|---|---|
| **CHIEF INSPECTOR ANTHONY BOYLE** <br> Individually, and in his official capacity as a <br> Chief Inspector for the <br> PHILADELPHIA POLICE DEPARTMENT <br> 1515 Arch St, 16th FL <br> Philadelphia, PA 19102 <br><br> And <br><br> **INSPECTOR RAYMOND EVERS** <br> Individually, and in his official capacity as an <br> Inspector for the <br> PHILADELPHIA POLICE DEPARTMENT <br> 1515 Arch St, 16th FL <br> Philadelphia, PA 19102 <br><br> And <br><br> **JOHN DOES ##1-100,** <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## SECOND AMENDED
## CIVIL ACTION COMPLAINT

Plaintiffs, Staff Inspector Debra Frazier, Captain Laverne Vann, Lieutenant Anthony Burton, and Police Officer Shamal Bryant (collectively, "Plaintiffs") bring this action against their employer, the City of Philadelphia d/b/a the Philadelphia Police Department ("PPD"), and their commanding officers, Chief Inspector Anthony Boyle and Inspector Raymond Evers (collectively, Boyle and Evers are referred to herein as "Commanding Officers") (collectively, the City and the Commanding Officers are referred to herein as "Defendants"). Defendants have retaliated against Plaintiffs because of Plaintiffs' good faith reporting of illegal policies, practices, customs and/or orders that were created, implemented, and ratified by Commanding Officers and acquiesced to by PPD.

2

## I. JURISDICTION AND VENUE

1. Jurisdiction in this Honorable Court is based on federal question granted by 28 U.S.C. § 1331; this Honorable Court is granted supplemental jurisdiction by 28 U.S.C. § 1367 over Plaintiffs' state law claims.

2. Venue appropriately lies in this judicial district as the events giving rise to Plaintiffs' claims occurred here and as at least one Defendant maintains its principle place of business herein.

## II. PARTIES

3. Plaintiff, Debra Frazier is a female African American adult individual who is a Staff Inspector assigned to the Narcotics Bureau of the PPD and resides in the Commonwealth of Pennsylvania. Plaintiff can be served care of her attorneys at the above-captioned address.

4. Plaintiff, Laverne Vann is a female African American adult individual who is a Captain assigned to the Narcotics Bureau of the PPD and resides in the Commonwealth of Pennsylvania. Plaintiff can be served care of her attorneys at the above-captioned address.

5. Plaintiff, Anthony Burton is a male African American adult individual who is a Lieutenant assigned to the Narcotics Bureau of the PPD and resides in the Commonwealth of Pennsylvania. Plaintiff can be served care of her attorneys at the above-captioned address.

6. Plaintiff, Shamal Bryant is a female African American adult individual who is a Police Officer assigned to the Narcotics Bureau of the PPD and resides in the Commonwealth of Pennsylvania. Plaintiff can be served care of her attorneys at the above-captioned address.

7. Defendant, City of Philadelphia, doing business as the Philadelphia Police Department ("PPD"), is a municipality, duly organized and existing under the laws of the Commonwealth of Pennsylvania, with an address for service at the above captioned address.

8. Defendant, Anthony Boyle, is a white male adult individual who, at all times material herein, was employed as a Chief Inspector for the Narcotics Bureau of the PPD. Defendant is sued both individually and in his official capacity.

9. Defendant, Raymond Evers, is a white male adult individual who, at all times material herein, was employed as an Inspector for the Narcotics Bureau of the PPD. Defendant is sued both individually and in his official capacity.

10. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below.

### III. OPERATIVE FACTS

11. At all times relevant hereto, Plaintiffs and Defendants Commanding Officers Boyle and Evers were assigned to the Narcotics Bureau of the PPD.

12. At all times relevant, Defendants Boyle and Evers were and are the Commanding Officers of the Narcotics Bureau whose responsibilities consist of overseeing the operations and conduct of PPD personnel assigned to the Narcotics Bureau.

13. At all times relevant, Plaintiff, Staff Inspector Frazier is and was the only African American assigned to the Narcotics Bureau who holds the rank of Staff Inspector. Plaintiff Staff Inspector Frazier is also the designated Integrity Officer of the Narcotics Bureau. Plaintiff Staff Inspector Frazier is the highest ranking African American police official in the Narcotics Bureau.

14. At all times relevant, Plaintiff, Officer Bryant, is and was assigned and employed as Staff Inspector Frazier's aide. Officer Bryant is the only black aide for the only black Inspector in the Narcotics Unit.

15. At all times relevant, Plaintiff, Captain Vann, is and was the only African American assigned to the Narcotics Bureau who holds the rank of Captain.

16. At all times relevant Plaintiff, Lieutenant Burton, is an African American assigned to the Narcotics Bureau.

17. At all times relevant, each of the Plaintiffs performed their duties of employment in a satisfactory manner.

18. In or around March 2017, Defendants Boyle and Evers became the commanding officers of the Narcotics Unit.

19. Since becoming the commanding officers of the Narcotics Unit, Commanding Officers implemented illegal policies, practices, customs and/or orders and subsequently retaliated against Plaintiffs as a direct result of their refusal to follow and/or opposition to same.

20. The aforementioned and later described retaliation further exacerbated the already hostile work environment to the point of a crisis.

## DEFENDANTS' ILLEGAL ORDERS TO FALSIFY NARCOTICS PROPERTY RECEIPTS

21. In March 2017, the Commanding Officers conducted a Narcotics Bureau-wide meeting at which Plaintiffs were present.

22. At said meeting, Defendants directed Plaintiffs and all officers of the Narcotics Bureau to gather information by "flipping" arrestees, which policies included illegal commands and procedures to make "make the drugs go away" by falsification of property receipts that are used in court prosecutions to identify narcotics and chain of custody of evidence.

23. Through "flipping," Commanding Officers expect and require officers to obscure the source of recovered narcotics if an arrestee is willing to provide information by falsifying the

5

property receipt required pursuant to the arrest, which circumvents the approved Confidential Informant Directive that is currently in place in the Department.

24. Property Receipts are official police records that are required to be completed truthfully upon the recovery or seizure of narcotics or other property by police.

25. Each time items are recovered incident to an arrest, e.g., drugs, money, or other evidence, officers are required to include the recovered property in Property Receipt that identifies the purported owner (the arrestee) of said property as well as the specific location and description of the recovered property.

26. However, through the illegal "flipping" policies, Boyle and Evers have instructed the Narcotics Unit officers not to truthfully state the source of the recovered narcotics.

27. "Making the drugs go away" is achieved by falsifying the Property Receipt that lists the recovered items.

28. Commanding Officers explicitly instruct officers to omit the arrestees' name, and/or the specific location of the recovered item as well as by listing recovered items on the property receipt as "investigative objects" and/or as "recovered on the highway," without identifying the arrestee from whom the narcotics were taken.

29. Property receipts are a primary item of evidence in any drug prosecution because such receipts establish the source of the alleged illegal narcotics or property, and documenting the chain of custody of same.

30. Property Receipts are signed by police officers and approved by supervisors.

31. The practice of falsification of property receipts brings into question the integrity of evidence, validity of prosecutions, and credibility of those narcotics officers who sign false receipts, and further puts arrestees' constitutional rights at serious risk.

32. For all material purposes, Commanding Officers, determine the policies, practices, and/or customs of the Narcotics Unit through their explicit orders to those under their command.

33. As the aforementioned Orders have been given by the Commanding Officers on numerous occasions, the Orders have created the practice and/or custom of the Narcotics Unit while commanded by the Commanding Officers.

### PLAINTIFFS' REFUSAL TO ENGAGE IN ILLEGAL PRACTICES

34. At all times relevant hereto, each of the Plaintiffs have refused to engage in the illegal flipping practices and have taken actions to oppose the said practices including, but not limited to, verbal complaints and/or written memorandums submitted through the chain of command.

35. Additionally, Plaintiffs reported their opposition to the illegal flipping practices during various Internal Affairs interviews.

36. Further, Plaintiff, Debra Frazier met with and informed non-party, First Deputy Commissioner of Field Operations, Myron Patterson of the aforementioned illegal flipping practices. Patterson told Plaintiff that he would inform non-party, Police Commissioner Richard Ross, Jr.

37. Likewise, Plaintiff, Laverne Vann met with and informed non-party, Deputy Commissioner of Special Operations, Dennis Wilson the aforementioned illegal flipping practices. Wilson told Plaintiff that he would inform non-party, Police Commissioner Richard Ross, Jr.

38. It is believed and therefore averred that Police Commissioner Richard Ross, Jr. was informed of the aforementioned illegal flipping practices by Patterson and/or Wilson.

39. It is believed and therefore averred that despite Police Commissioner Richard Ross, Jr.'s knowledge of the aforementioned illegal flipping practices, the illegal flipping practices continued and may be ongoing.

### RETALIATION FOR PLAINTIFFS' REFUSAL
### TO ENGAGE IN ILLEGAL PRACTICES

40. Subsequent to Plaintiffs making the aforementioned reports, Commanding Officers have retaliated against each of the Plaintiffs by subjecting them to adverse actions, including but not limited to the following:

   a. Commanding officers have threatened to change the locks to Plaintiff Staff Inspector Frazier's office with no explanation or cause; have harassed her aide, Plaintiff Officer Bryant; have nitpicked her weekly reports in an effort to create a paper trail to indicate she is not doing her job properly; have required her to discipline her aide, Officer Bryant, for false reasons; have intentionally shunned and excluded her from proper participation in the leadership of the Narcotics Unit; and, have accused her of not working when she was in fact working.

   b. Plaintiff Captain Vann was ordered to undergo "bike training" which is task for "bike cops" that no Captain has ever been required to perform in the Narcotics Unit. As a result of this unprecedented directive, Captain Vann, who informed Commanding Officers that she never learned how to ride a bicycle, and that she would not be able to complete the "training," fell off of the bicycle and sustained serious injuries that left her hospitalized for several days and forced her to go out on medical leave. Commanding Officers have also

8

       made it known to Captain Vann that they intend to involuntarily transfer her to keep her quiet and punish her for her opposition to the illegal practices.

   c. Commanding Officers have falsely accused Plaintiff Lieutenant Anthony Burton of misusing his assigned squad vehicle, and took that vehicle away from him so it could be assigned to a more junior officer. Additionally, Lieutenant Burton has been subjected to false discipline and accusations for non-existent policy violations; has been secretly recorded in his office; has had his transfer requests intentionally delayed by inclusion of a disparaging and false memorandum in his transfer file, in an attempt to thwart his opportunity to transfer; and, has been falsely accused of submitting incorrect paperwork.

   d. Commanding Officers intentionally delayed or ignored Plaintiff Police Officer Shamal Bryant's overtime requests; have denied her opportunities for overtime without cause and despite there being shifts available; have harassed her with false accusations of disciplinary violations, and have directed her to cease inquiries concerning the overtime and assignments to which she is entitled.

41. Further, subsequent to the filing of this litigation, Defendants have further retaliated against Plaintiffs by subjecting them to adverse actions, including but not limited to being subjected to false accusations, disciplinary warnings based on non-existent policy violations, and unfounded Internal Affairs investigations.

42. Additionally, subsequent to the filing of this litigation, Plaintiff Staff Inspector Frazier made a written request to Internal Affairs for a wand-sweep of her work office in search for any hidden listening devices.

43. On the day following Plaintiff Staff Inspector Frazier's written request, Plaintiff found her work office broken into and a ceiling light tampered with.

44. On information and belief, Commanding Officers directed the hidden listening device to be removed from Plaintiff Staff Inspector Frazier's office upon learning of Plaintiff's written request.

## EXACERBATION OF THE ALREADY HOSTILE WORK ENVIRONMENT[1]

45. The aforementioned retaliation further exacerbated the already hostile work environment to the point of a crisis.

46. The workplace was already was already hostile prior to the aforementioned retaliation due to the following examples of discrimination in the Narcotics Bureau:

   a. Commanding Officers allowed a confederate flag, a symbol of racism, white supremacy, and slavery, to be displayed on a Corporal's vehicle while parked at the workplace in full view of fellow law enforcement officers as well as persons in minority communities;

   b. Commanding Officers have referred to persons in minority communities by offensive names including "scum," and refer to the killing of persons in minority communities as "thinning the herd;"

---

[1] Plaintiffs' claims concerning discrimination and hostile work environment are currently pending before the Pennsylvania Human Relations Commission. Plaintiffs reserve the right to bring these claims in a separate action once they exhaust their administrative remedies.

  c. Commanding Officers have assigned African American officers to more dangerous locations and less favorable assignments and while assigning the more beneficial shifts and safer locations to similarly situated white officers; and

  d. Commanding Officers have subjected African American supervising officers to terms and conditions of employment different from those of similarly situated white supervising officers.

47. Defendants' conduct compromises the integrity of the Narcotics Unit, the PPD and justice system whose protections are guaranteed by the Constitutions of the United States as well as the Commonwealth of Pennsylvania.

48. As such, there is an unjustifiable risk that cases and testimony against minority arrestees have been and will continue to be tainted by racial bias and intentional discrimination and it is imperative that prosecutions and convictions be reviewed due to both discriminatory intention as well as falsification of property receipts and other evidence, as stated.

### IV. COUNTS OF ACTION

#### COUNT I – CIVIL RIGHTS VIOLATION
#### 42 U.S.C. § 1983
#### RETALIATION FOR OPPOSITION TO ILLEGAL POLICIES
*Plaintiffs v. Defendants*

49. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

50. Defendants took the aforementioned adverse actions against Plaintiffs in retaliation to their participation in the protected activity of opposing illegal flipping practices, which includes falsifying documents and evidence related to the recovery of drugs in arrests and operations.

11

51. As a result of Defendants' actions as aforesaid, Defendants have denied Plaintiffs the right to the same terms, conditions, privileges and benefits of their employment agreement with the City of Philadelphia Police Department, in violation of 42 U.S.C. § 1981.

52. Such violation of 42 U.S.C. § 1981 is actionable against the City of Philadelphia, a municipal entity, pursuant to 42 U.S.C. § 1983.

53. Said retaliation against Plaintiffs have affected Plaintiffs to their detriment.

54. Said retaliation would detrimentally affect a reasonable person under similar circumstances.

55. Said retaliation exacerbated the already hostile work environment to the point of a crisis.

56. Said violations were done intentionally and/or knowingly with malice or reckless indifference, and warrant the imposition of punitive damages.

57. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 1983 Plaintiffs have suffered the damages and losses set forth herein and have incurred attorneys' fees and costs.

58. Plaintiffs are suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory acts unless and until this Court grants the relief requested herein.

59. The wrongful acts and conduct of Defendants were done with deliberate indifference to the statutory and constitutional rights of Plaintiffs.

60. As such, Plaintiffs have and continue to suffer damages as set forth herein.

## COUNT II – WHISTLEBLOWER LAW
## 43 P.S. LABOR § 1421, ET SEQ
## RETALIATION FOR OPPOSITION TO WRONGDOING
*Plaintiffs v. Defendants*

61. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

62. Plaintiffs took actions to oppose the Commanding Officers orders to engage in illegal flipping practices.

63. The Commanding Officers' orders to engage in illegal flipping practices meets the definition of "wrongdoing" as defined in 43 P.S. Labor § 1422.

64. Defendants took the aforementioned adverse actions against Plaintiffs in retaliation for their participation in the protected activity of opposing illegal flipping practices.

65. Said retaliation has affected Plaintiffs to their detriment.

66. Said retaliation would detrimentally affect a reasonable person under similar circumstances.

67. Said violations were done intentionally and/or knowingly with malice or reckless indifference and warrant the imposition of punitive damages.

68. As a direct and proximate result of Defendants' violation of 43 P.S. Labor § 1421, et seq., Plaintiffs have suffered the damages and losses set forth herein and have incurred attorneys' fees and costs, to which Plaintiffs are entitled to compensation.

69. Plaintiffs are suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory acts unless and until this Court grants the relief requested herein.

70. The wrongful acts and conduct of Defendants were done with deliberate indifference to the statutory and constitutional rights of Plaintiffs.

71. As such, Plaintiffs have and continue to suffer damages as set forth herein.

## V. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek damages and legal and equitable relief in connection with Defendants' improper conduct and specifically prays that this Court grant the following relief to Plaintiffs:

a) declaring the acts and practices complained of herein to be in violation of Sections 1981, 1983, and 1421, et seq.;

b) enjoining and permanently restraining the violations alleged herein;

c) entering judgment against the Defendants and in favor of Plaintiffs in an amount to be determined, including compensatory and punitive damages;

d) awarding Plaintiffs such other damages as are appropriate under Sections 1981, 1983, and 1421, et seq.;

e) awarding Plaintiffs the costs of suit, attorneys' fees; and expert fees and other; and

f) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully Submitted,

WEISBERG LAW

/s/ Matthew B. Weisberg
MATTHEW B. WEISBERG, ESQ.
L. ANTHONY DIJIACOMO, III, ESQ.

DATED: 5-10-2018

MILDENBERG LAW FIRM

/s/ Brian R. Mildenberg
BRIAN R. MILDENBERG, ESQ.

DATED: 5-10-2018

14

SCHAFKOPF LAW, LLC

/s/ Gary Schafkopf
GARY SCHAFKOPF, ESQ.
DEANNA WATSON, ESQ.

DATED: 5-10-2018

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA FRAZIER, et al. | : CIVIL ACTION |
| | : DOCKET NO.: 2:17-cv-05421 |
| Plaintiffs | : |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, et al. | : **JURY TRIAL OF TWELVE (12)** |
| | : **JURORS DEMANDED** |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I, Matthew B. Weisberg, Esquire, hereby certify that on this 9th day of May, 2018, a true and correct copy of the foregoing Plaintiffs' Second Amended Civil Action Complaint was served via ECF, upon the following party:

Christopher H. Rider, Esq.
City of Philadelphia Law Dept.
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

WEISBERG LAW
/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
Attorney for Plaintiff